IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| C. RODNEY YODER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    No. 12-CV-1269-WDS |
| | ) |
| LORA ACRA and | ) |
| DARREN ONWILER, | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

Plaintiff C. Rodney Yoder brings this action under 42 U.S.C. § 1983 claiming that defendants Lora Acra and Darren Onwiler, who are police officers, violated his Fourth Amendment rights by arresting him without probable cause. Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). In their motion, defendants referred to an attached affidavit from defendant Acra, and asked the Court to treat the motion as a motion for summary judgment under Rule 56. The Court agreed to do so and gave notice to the parties. *See* Fed. R. Civ. P. 12(d). Plaintiff has responded accordingly, calling his brief a response to defendants' motion for summary judgment and including exhibits. Thus now before the Court is defendants' motion for summary judgment (Doc. 14) and plaintiff's response (Doc. 15).

The Court must first comment on some issues. Neither party's brief for this motion includes a statement of facts. Defendants' motion consists almost entirely of citations to legal authority, while plaintiff's response gives facts that are out of order, mixed with argument, and often irrelevant. In addition, some of plaintiff's allegations are not supported

by the citations provided.[1] The Court's local rules do not require a separate statement of facts, but they do require all briefs to contain citations to the record, and they warn that "[a]llegations of fact not supported by citation may, in the Court's discretion, not be considered." SDIL-LR 7.1(d). Further, "[a]ny brief in support of or in opposition to a motion for summary judgment shall contain citation … to the record … ." SDIL-LR 7.1(e). The Court has reviewed the briefs and the record as it stands, but many facts, particularly those in defendant Acra's affidavit, were neither alleged in a brief nor supported by citation. Those facts are generally omitted in this order and are not considered. Since this is a motion for summary judgment, the Court construes all facts and makes all reasonable inferences in favor of plaintiff, the nonmoving party. *See, e.g.*, *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1125 (7th Cir. 2006). The Court may not make credibility determinations or weigh conflicting evidence. *See, e.g.*, *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

### BACKGROUND

Plaintiff C. Rodney Yoder was renting a house to Kevin and Christina Jacoby. (Only Christina Jacoby is involved in the pertinent facts, so from here on the singular "Jacoby" refers only to her.) On July 11, 2012, plaintiff served the Jacobys with a 30-day notice terminating their lease, giving them until August 12 to move out (Doc. 2, Ex. 1). Jacoby was upset by the notice and phoned the police on July 16 to complain. Defendant Darren Onwiler, a deputy in the Madison County Sheriff's Department, was dispatched to the house. While Onwiler was there, plaintiff drove by, so Onwiler waved him over. Onwiler told plaintiff that he was harassing Jacoby by phoning her that morning for permission to ac-

---

[1] For instance, plaintiff asserts that defendant Acra "knew the occupants had moved to their new residence in Cottage Hills" (Doc. 15, p. 4). Acra's affidavit says that Jacoby told her they had been moving out for the last two days but had spent the previous night at their new residence. In other words, they were still moving. The rest of the same paragraph gives further information that would lead Acra to believe the Jacobys were not finished moving. Plaintiff's counsel misrepresents Acra's statements.

cess the property to perform repairs. Plaintiff explained that his actions were necessary for his business and that he was not harassing Jacoby, but Onwiler responded that he would not believe anything plaintiff said. Plaintiff gave Onwiler a copy of the 30-day notice he'd served on the Jacobys (Doc. 15, Ex. 1, ¶ 3).

Plaintiff is able to see the Jacoby property every day, and he watched the Jacobys move their belongings out of the house before August 11 (*id.*, ¶ 2). After that, he says no one was in the house and the Jacobys' pit bulls were gone.

On August 14, at 8:00 a.m., plaintiff went to the house. The grass had not been mowed. A vacuum cleaner and television that had been sitting in the front yard were now gone (*id.*, ¶ 5). He could not see anyone inside the house. The beds were gone. He went inside, though he is opaque about how. He did not break any locks. He says police officers, while responding to an emergency, had broken the window frame on the front door a year earlier (*id.*, ¶ 12). The window was replaced with Plexiglas, such that now "[o]ne could simply push the bottom of the window in and reach around to unlock the door" (Doc. 15, Ex. 1, ¶ 12). He found garbage all over the floors of the house and in the garage. The refrigerator was filthy. Plaintiff then changed the locks to the house and padlocked the door to the garage. He took pictures of the house and mowed the grass.

At about 9:00 a.m., another of plaintiff's tenants, Brian Ernst, arrived in a pickup truck to help plaintiff clean and remove the garbage. Ernst says no one was in the house. The condition of the property, he says, was "deplorable." (Doc. 15, Ex. 4, ¶ 6). "Junk was all over the floor and the kitchen was filthy" (*id.*). He says there was "no question" in his mind that the Jacobys had abandoned the premises.

Plaintiff noticed at some point that a ladder and eight boxes of floor tiles, which had been there on July 11, were now missing. He called the Sheriff's Department to report them as stolen (*id.*, ¶ 7). Soon after, Jacoby showed up at the house across the street, then defendants Acra and Onwiler arrived.

3

Defendants questioned several people and made phone calls for a half hour. Plaintiff says he told them he did not steal the Jacobys' property; he was only there to clean up so he could lease it to other people. A friend of the Jacobys was at the scene. She said that the Jacobys had already moved out and that Jacoby was only trying to "get back" at plaintiff (Doc. 15, Ex. 4, ¶ 7). Defendants did not interview her, however. Defendant Acra asked plaintiff about items he had taken to his minivan. Plaintiff responded it was "just some trash," and told her he was burning trash in the backyard in a burn barrel. At that point, she took plaintiff into custody and secured him in the back of her squad car (Doc. 14, Ex. 1, ¶¶ 13–14).

## DISCUSSION

Under Federal Rule of Civil Procedure 56, the court must grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). A party asserting that a fact cannot be, or is genuinely disputed, must support the assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

After the moving party has satisfied its burden, the burden shifts to the nonmoving party. The nonmoving party "'must do more than raise some metaphysical doubt as to the material facts; [it] must come forward with specific facts showing that there is some genuine issue for trial.'" *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (quot-

4

ing *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006)). A genuine issue for trial exists "only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Argyropoulos*, 539 F.3d at 732 (quoting *Sides v. City of Champaign*, 496 F.3d 820, 826 (7th Cir. 2007)).

## ANALYSIS

Defendants first claim they had probable cause to arrest plaintiff for burglary. "Probable cause is an absolute defense to a claim of wrongful arrest asserted under Section 1983 against police officers." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008); *Wagner v. Wash. Cnty.*, 493 F.3d 833, 836 (7th Cir. 2007) (per curiam). Probable cause to arrest exists "if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge … are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Wagner*, 493 F.3d at 836 (quoting *Mich. v. DeFillippo*, 443 U.S. 31, 37 (1979)); *accord Beck v. Ohio*, 379 U.S. 89, 91 (1964). The court evaluates probable cause "'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)).

Probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000). It requires only a "probability or substantial chance of criminal activity on the suspect's part." *Id.*

Determining whether probable cause exists is "necessarily a fact-intensive inquiry," *Jones by Jones v. Webb*, 45 F.3d 178, 181–82 (7th Cir. 1995), which must be decided by a jury "'if there is room for a difference of opinion concerning the facts or the

reasonable inferences to be drawn from them,'" *Wheeler*, 539 F.3d at 634 (quoting *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)). "Accordingly, a conclusion that probable cause existed as a matter of law is appropriate only when no reasonable jury could find that the officers did not have probable cause to arrest [the suspect]." *Maxwell*, 998 F.2d at 434.

Defendants say they had an objectively reasonable basis to believe plaintiff had committed burglary. Under Illinois law, "[a] person commits burglary when without authority he knowingly enters or without authority remains within a building ... with intent to commit therein a felony or theft." 720 ILCS 5/19-1(a) (2012). Thus the elements of burglary are (1) entry without authority and (2) intent to commit a felony or theft. *People v. Bailey*, 399 N.E.2d 724, 726 (Ill. App. Ct. 1980). Of note, the offense is complete upon the suspect's entering a building with felonious intent. *People v. Clark*, 195 N.E.2d 631, 633 (Ill. 1964); *People v. Maffioli*, 94 N.E.2d 191, 194 (Ill. 1950) ("The gravamen of the offense is the felonious intent with which the building is entered."); *People v. Zuniga*, 425 N.E.2d 1094, 1097 (Ill. App. Ct. 1981); *People v. Davis*, 369 N.E.2d 1376, 1381 (Ill. App. Ct. 1977). It is not necessary for the suspect to have entered by force, *Maffioli*, 94 N.E.2d at 193, although entry by force can offer evidence of the suspect's intent, *Davis*, 369 N.E.2d at 1381. It is also not necessary for the suspect to have taken anything. *Clark*, 195 N.E.2d at 633.

Relying on an affidavit from defendant Acra, defendants offer two bare-bones arguments in support of probable cause: (1) Acra interviewed Jacoby and three other witnesses, "all of whom provided competent testimony to establish that there was probable cause to believe that Plaintiff had committed the offense of burglary," and (2) plaintiff gave Acra contradictory statements trying to justify his presence at the house (Doc. 14, p. 4).

Yet defendants do not discuss the specifics of Acra's interviews or plaintiff's con-

tradictory statements, which makes the determination of probable cause here difficult. In a § 1983 case claiming a violation of the Fourth Amendment, it is the plaintiff's burden to establish an absence of probable cause. *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009); *Woods v. City of Chi.*, 234 F.3d 979, 996 (7th Cir. 2000). However, as indicated by the language of Rule 56(a), the initial burden here is on the defendants as the moving party to establish that there is no genuine dispute as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th Cir. 1973). And they must do so by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *accord Celotex*, 477 U.S. at 323. A determination of probable cause is a fact-intensive inquiry. It is, therefore, not enough to say that Acra interviewed witnesses. Defendants do not explain how the interviews were sufficient to warrant a prudent person in believing that plaintiff had committed, or was committing, burglary. The undisputed facts show that defendants knew plaintiff was the owner of the property.[2] They knew he had served the Jacobys with an eviction notice the month before. Plaintiff told defendants the Jacobys had moved out three days earlier. By all accounts, the condition of the property was deplorable. Plaintiff maintained that he did not steal any property and that he was there to clean up, which, given the condition of the property, would have made sense. When defendant Acra asked plaintiff what items he had taken to his minivan, plaintiff said it was just trash.

      The fact that Acra interviewed several witnesses does not mean she had probable cause. For example, Acra spoke with Christina Jacoby, who accused plaintiff of taking her property, including the floor tiles. Generally, a single eyewitness who identifies the suspect is enough to establish probable cause for arrest, but that assumes the eyewitness does not hold an apparent grudge. *Phillips v. Allen*, 668 F.3d 912, 915 (7th Cir. 2012); *Askew v.*

---

[2] Plaintiff's ownership of the property does not mean he could not have been burglarizing it, for the victim of a burglary does not need to have legal title to the premises. *People v. Bailey*, 399 N.E.2d 724, 726 (Ill. App. Ct. 1980). Plaintiff's ownership may indicate that he lacked felonious intent, though.

*Chi.*, 440 F.3d 894 (7th Cir. 2006); *Hebron v. Touhy*, 18 F.3d 421, 422–23 (7th Cir. 1994). Jacoby had called the police one month before accusing plaintiff of harassing her. She was also being evicted by plaintiff, which was cause to hold a grudge against him. *See Hebron*, 18 F.3d at 423 (finding a "significant chance" that tenants who were being evicted "bore a grudge against their landlords," which made it unreasonable, and therefore unconstitutional, to rely only on them). Defendants therefore had reason to distrust Jacoby. In that situation, officers "must do more" to meet the standard of prudent conduct. *Id.* Acra did do more by interviewing other witnesses, but determining the existence of probable cause is still difficult.

Acra spoke with Harold Hays, apparently a neighbor or friend who was helping the Jacobys move. Hays told Acra he saw plaintiff "exit the residence and load items in his minivan" (Doc. 14, Ex. 1, ¶ 8). That fact, however, is not inconsistent with plaintiff's story that he was cleaning the house and removing trash. Hays does not say whether any items were Jacoby's. Thus, although Acra spoke to Hays, the information she obtained from him does not help to establish probable cause. But the Court only discusses these details to illustrate how defendants' motion is inadequate. It is not considering everything in Acra's affidavit. *See* SDIL-LR 7.1(d). Moreover, arguments not made are deemed waived. *See, e.g.*, *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *United States v. Thornton*, 642 F.3d 599, 606 (7th Cir. 2011) (undeveloped and unsupported arguments may be deemed waived).

Defendants' other assertion is that they had probable cause because plaintiff gave Acra contradictory statements trying to justify his presence at the house. They again do not cite to particular parts of materials in the record to indicate which contradictory statements they mean and how the statements show there is no genuine dispute as to any material fact. They fail to meet their burden on this motion, *see* Fed. R. Civ. P. 56(c)(1); *Adickes*, 398 U.S. at 157, and also waive the point, *see Nelson*, 657 F.3d at 590. Even if the Court were

to consider the statements, the basis for probable cause is not clear. Acra says plaintiff gave her different information during an interview at the police station from what he gave at the house (Doc. 14, Ex. 1, ¶ 18). Yet she had already arrested plaintiff by then. Specifically, while they were at the house, plaintiff had told Acra he was burning trash in the backyard in a burn barrel. In response, Acra says, "I took Plaintiff into custody and secured him in the rear passenger seat of my squad car as I believed he had committed the felony criminal offense of burglary" (Doc. 14, Ex. 1, ¶ 14). A person has been arrested when, "'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir. 1994) (quoting *United States v. Mendenhall*, 446 U.S. 544, 544 (1980)). Plaintiff would have believed that he was not free to leave when Acra secured him in her squad car, if not before. So the arrest occurred then, and contradictory statements plaintiff might have made after that are not relevant to what defendants knew at the time of the arrest. *See Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000) ("The existence of probable cause turns on the information known to the officers at the moment the arrest is made, not on subsequently-received information."). In summary, the Court **FINDS** that defendants do not meet their initial burden on this motion for summary judgment as to the existence of probable cause, and arguments they do not make are waived.

Defendants also claim they are protected from liability for damages by qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Determining whether qualified immunity applies to the actions of a public official involves two questions, which may be addressed in any order. *Pearson v. Callahan*, 555 U.S. 223, 236–42 (2009). The first question is whether the facts alleged or shown by the plaintiff, taken in the light most favorable to him, amount to a constitutional violation. If they do not, then the official is entitled to qualified immunity. *Jones v. Clark*, 630 F.3d 677, 680 (7th Cir. 2011); *Carvajal v.*

*Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). The court construes the facts in the plaintiff's favor as it would do on a motion to dismiss under Rule 12(b)(6) or motion for summary judgment under Rule 56. *See Pearson*, 555 U.S. at 232.

The second question is whether the constitutional right at issue was clearly established at the time of the alleged violation. *Jones*, 630 F.3d at 680. To determine whether a right was clearly established, the court asks "whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation." *Carvajal*, 542 F.3d at 566; accord *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). In the context of a wrongful arrest, the question turns on whether the arresting officer had "arguable probable cause." *Jones*, 630 F.3d at 684. Arguable probable cause exists when a reasonable officer could mistakenly have believed that he had probable cause to make the arrest. *Gutierrez v. Kermon*, --- F.3d ----, No. 12-2934, 2013 WL 3481359, at *4 (7th Cir. July 12, 2013); *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012); *Jones*, 630 F.3d at 684; *Humphrey*, 148 F.3d at 725.

Here, defendants make only a series of legal conclusions in support of qualified immunity. They claim their actions did not violate clearly established law. They say the law of probable cause was clear, and they had probable cause to believe plaintiff had committed a criminal offense. Their actions, they say, did not violate plaintiff's constitutional rights and were not unreasonable in light of clearly established law. But defendants do not discuss any of the facts alleged by plaintiff. To make matters more difficult, plaintiff's response brief does not say anything about qualified immunity.

Regarding the first question of qualified immunity, the Court believes the facts shown by plaintiff, taken in the light most favorable to him, amount to a constitutional violation. The Court discussed the issue of probable cause above; the facts construed in plaintiff's favor do not suggest that he had any intent to steal Jacoby's property. The second question, in this context, is whether the arresting officer had arguable probable cause,

meaning a reasonable officer could *mistakenly* have believed that he had probable cause to make the arrest. Defendants do not discuss arguable probable cause. The Court again finds that defendants do not meet their burden on this motion. They do not properly support it with citations to the record. *See* Fed. R. Civ. P. 56(c)(1); *Adickes*, 398 U.S. at 157. The qualified-immunity argument is also so undeveloped that it is waived. *Nelson*, 657 F.3d at 590.

Finally, defendants suggest plaintiff's claims are barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act because defendants' conduct in the enforcement of the law was not "willful and wanton." *See* 745 ILL. COMP. STAT. 10/2-202. As state law, however, the Tort Immunity Act does not apply as a defense to § 1983 actions for violations of the U.S. Constitution. *Anderson v. Vill. of Forest Park*, 606 N.E.2d 205, 212 (Ill. App. Ct. 1992); *Hampton v. City of Chi., Cook Cnty., Ill.*, 484 F.2d 602, 607 (7th Cir. 1973).

## CONCLUSION

The Court **FINDS** that defendants Acra and Onwiler do not properly support their motion for summary judgment (Doc. 14) in accordance with Rule 56 and Local Rule 7.1. It is therefore **DENIED**.

**IT IS SO ORDERED.**

**DATED: August 28, 2013**

/s/ **WILLIAM D. STIEHL**
**DISTRICT JUDGE**